# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**STEVE ALLEN EHRLICH and**
**JACQUELINE EHRLICH,**

        Plaintiffs,

**v.**                       **CIVIL ACTION NO. 3:13-CV-23 (Lead Case)**
                                   **(JUDGE GROH)**

**CROWN ENTERPRISES, INC.,**
**CENTRAL TRANSPORT**
**INTERNATIONAL, INC., CENTRAL**
**TRANSPORT NORTH AMERICA, INC.,**
**CENTRAL TRANSPORT LLC, CENTRAL**
**TRANSPORT MICHIGAN LLC and**
**GLS LEASCO, INC.,**

        Defendants,

and

**PETER GARCIA, JR.,**

        Plaintiff,

**v.**                      **CIVIL ACTION NO. 3:13-CV-42**
                                   **(JUDGE GROH)**

**RONALD J. COFFEE and**
**CENTRAL TRANSPORT, LLC and**
**CENTRAL TRANSPORT MICHIGAN, LLC,**

        Defendants,

and

**WILLIAM S. ALLEN,**

        Plaintiff,

**v.**                          **CIVIL ACTION NO. 3:13-CV-43**
                                     **(JUDGE GROH)**

**RONALD J. COFFEE and**
**CENTRAL TRANSPORT, LLC and**

**CENTRAL TRANSPORT MICHIGAN, LLC,**

                Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS CROWN ENTERPRISES, INC., CENTRAL TRANSPORT INTERNATIONAL, INC., CENTRAL TRANSPORT NORTH AMERICA, INC., CENTRAL TRANSPORT MICHIGAN, LLC, and GLS LEASCO, INC.

Currently pending before the Court is Defendants' Motion for Summary Judgment filed on February 11, 2014, in this consolidated action as to the claims of Plaintiffs Steve Allen Ehrlich and Jacqueline Ehrlich [Doc. 117]. Pursuant to Local Rule of Civil Procedure 7.02(b)(1) memoranda in response to the motion for summary judgment "shall be filed and served within 21 days from the date of service of the motion." In addition, Local Rule of Civil Procedure 5.06(g) provides an additional three days to the prescribed period to respond because service was conducted by electronic means. Therefore, Plaintiffs were required to file a response no later than March 7, 2014. As of this date, Plaintiffs have not filed a response. Accordingly, this issue is ripe for the Court's review.

### I. UNDISPUTED FACTS

On March 21, 2011, Plaintiff Steve Ehrlich was driving a federal government-owned vehicle on official government business in Jefferson County, West Virginia. Compl. ¶ 14; Defs.' Mot. Summ. J. ¶ 1. At the time of the collision, Mr. Ehrlich's vehicle was stopped at a traffic light behind a tractor-trailer owned by J.B. Hunt Transport on Route 340 at the intersection of 340 North and Shore Line Drive. Compl. ¶ 14; Defs.' Mot. Summ. J. ¶ 2-3.

At about the same time, Defendant Ronald J. Coffee was operating a 2006

International Tractor with an attached trailer.  Defs.' Mot. Summ. J. ¶ 4.  Defendant Coffee was traveling in the eastbound lane of Route 340, and he was directly behind Mr. Ehrlich's vehicle.  Compl. ¶ 15; Defs.' Mot. Summ. J. ¶ 6.  However, as Defendant Coffee approached the traffic light, he failed to stop and crashed into the rear of Mr. Ehrlich's vehicle.  Compl. ¶ 15; Defs.' Mot. Summ. J. ¶ 7.

At the time of the collision, Defendant Coffee was an employee of Defendant Central Transport, LLC.  Defs.' Ans., ¶ 7.  Defendant Coffee was operating the subject tractor and trailer under Central Transport, LLC's sole authority.  Defendant GLS LeasCo owned the tractor and the trailer that was involved in the collision.  Dep. Briand, p. 8, lns. 4-6, 18-19.  However, Defendant Central Transport, LLC leased the tractor and trailer from GLS LeasCo pursuant to a lease agreement dated December 21, 2009 and entered into by GLS LeasCo and Central Transport, LLC.  The lease agreement provided that Central Transport, LLC retained sole possession and control over the tractor and trailer until the expiration of the lease.  Defs.' Mot. Summ. J. ¶ 15; Ex. C., ¶ 10.  The lease agreement also provided that all risk of loss and damage to the equipment is placed upon Central Transport, LLC.  Defs.' Mot. Summ. J. ¶ 16; Ex. C., ¶ 11.

Central Transport, LLC was responsible for servicing and maintaining the subject truck. Dep. Briand, pgs. 29, 31, 34, 35; Ex. 1; Dep. Chapman, pgs. 26, 29.  Additionally, Central Transport, LLC was responsible for negotiating the load that was hauled by its drivers, including Ronald Coffee, and negotiating labor contracts, if any.  Id.  Finally, Central Transport, LLC was responsible for their drivers, including their qualification and training, maintaining log books, determining their routes, and complying with safety

3

regulations.  Dep. Briand, pgs. 33-35; Dep. Chapman, pgs. 29-31.

Central Transport Michigan, LLC is an entity that no longer exists, but it was a more regional carrier covering predominantly the Michigan area.  Dep. Briand, p. 12.  Central Transport Michigan, LLC did not have any ownership or interest in the subject tractor and trailer on the date of the accident.  Id.

On the date of the accident, Defendants Central Transport International, Inc. and Central Transport North America, Inc. were inactive and inoperable entities.  Defs.' Mot. Summ. J. ¶ 10; Ex. A. Dep. Briand, p. 26, lns. 10-24.  Also on the date of the collision, Defendant Crown Enterprises, Inc. conducted business solely as a real estate ownership and management company.  Defs.' Mot. Summ. J. ¶ 11; Ex. A. Dep. Briand, p. 23, lns. 19-22.

## II.  PROCEDURAL HISTORY

On March 1, 2013, Plaintiffs filed their Complaint in the United States District Court for the Northern District of West Virginia.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 pursuant to diversity of citizenship because Plaintiffs are completely diverse from Defendants and the amount in controversy exceeds $75,000.  On April 29, 2013, Defendants filed their answer and affirmative defenses.

On May 10, 2013, this Court granted Defendants' motion to consolidate the three similar pending cases: Civil Action Number 3:13-CV-23, Civil Action Number 3:13-CV-42, and Civil Action Number 3:13-CV-43.  Then, on February 19, 2014, this Court *sua sponte* consolidated the civil actions, and the lead case was designated as Civil Action Number 3:13-CV-23.

## III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. See Fed. R. Civ. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. Pursuant to Rule 56(c)(3), the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

## IV.  ANALYSIS

In this case, Plaintiffs did not file a response to Defendants' Motion for Summary Judgment.  However, this Court is obligated to thoroughly analyze the motion and must determine "whether the moving party is entitled to summary judgment as a matter of law."  Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (internal citation omitted).

Defendants argue that they are entitled to summary judgment as to Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS LeasCo, Inc. (collectively referred to as the "Corporate Defendants") because Plaintiffs cannot sustain a claim against the entities for vicarious liability.  Plaintiffs allege that Defendant Coffee was an agent and/or employee of the Corporate Defendants.  Pls.' Compl. ¶¶ 15, 17-19.  Therefore, Plaintiffs allege that the Corporate Defendants are liable for Plaintiffs' injuries based on a vicarious liability/*respondeat superior* theory.

Because this Court is sitting in diversity, it will apply the substantive laws of West Virginia.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  Under West Virginia law, the doctrine of *respondeat superior* "imposes liability on an employer for the acts of its employees within the scope of employment, not because the employer is at fault, but merely as a matter of public policy."  Dunn v. Rockwell, 689 S.E.2d 255, 274 (W. Va. 2009); see also Syl. Pt. 3, Musgrove v. Hickory Inn, Inc., 281 S.E.2d 499 (W. Va. 1981) (holding that if an agent or employee is "acting within the scope of his employment, then his principal or employer may also be held liable").  Therefore, if "it can be shown that an individual is an agent and if he is acting within the scope of his employment when he

6

commits a tort, then the principal is liable for the tort as well as the agent." Barath v. Performance Trucking Co., Inc., 424 S.E.2d 602, 605 (W. Va. 1992).

In assessing whether an agency relationship exists, the Supreme Court of Appeals of West Virginia has held that

> [t]here are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior*: (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal, and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control is determinative.

Timberline Four Seasons Resort Mgmt. Co., Inc. v. Herlan, 679 S.E.2d 329, 334 (W. Va. 2009) (citing Syl. Pt. 5, Paxton v. Crabtree, 400 S.E.2d 245 (W. Va. 1990)). An essential element of the agency relationship is "the existence of some degree of control by the principal over the conduct and activities of the agent." Syl. Pt. 3, Teter v. Old Colony, 441 S.E.2d 728 (W. Va. 1994).

In this case, the key issue is whether Defendant Coffee is an agent or employee of the Corporate Defendants. First, the Court must evaluate whether the Corporate Defendants selected or engaged Defendant Coffee. It is undisputed that the Corporate Defendants did not select or engage Defendant Coffee. Hal Briand, President of GLS LeasCo, testified that at the time of the collision, Defendant Coffee was an employee of Central Transport. Ex. A, Dep. p. 7, ln. 13. Bill Chapman, Central Transport, LLC's Director of Safety, also testified that Defendant Coffee was an employee of Central Transport, LLC at the time of the collision. Ex. B, Dep. p. 23, lns. 14-21.

Second, the Court must determine whether the Corporate Defendants paid or compensated Defendant Coffee. It is undisputed that Central Transport, LLC

7

compensated Defendant Coffee.  Mr. Chapman testified that Defendant Coffee was paid by the trip on a flat rate basis.  Id. at p. 23, lns. 7-11.

Third, the Court must evaluate whether the Corporate Defendants had the power to fire Defendant Coffee.  It is also undisputed that Central Transport, LLC had the power to fire Defendant Coffee.  Mr. Chapman testified that Central Transport, LLC had the power to fire and discipline Defendant Coffee.  Id. at p. 25, lns. 8-12.

Finally, the most important factor the court must analyze is whether the Corporate Defendants had any control over Defendant Coffee.  It is undisputed that Central Transport, LLC–not the Corporate Defendants--had the power to control Defendant Coffee.  Indeed, at Mr. Chapman's deposition, he was asked "What companies have the authority to control [Coffee's] activities?" Id. at p. 25, lns. 4-5.  Mr. Chapman answered that Central Transport, LLC had control over his activities.  Id. at p. 25, lns. 6-7.  Indeed, Central Transport, LLC had sole management responsibility over Defendant Coffee, including qualifying him, hiring him, training him, determining his routes, and monitoring his log books.  Id. at p. 29, lns. 20-24; p. 30, lns. 13-20; p. 31, lns. 1-3

Therefore, in analyzing the undisputed facts, the four factors weigh heavily in favor of finding no agency relationship between Defendant Coffee and the Corporate Defendants:  Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS LeasCo, Inc. Accordingly, the Court **FINDS** that Defendant Coffee is not an agent or employee of the Corporate Defendants, Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS

LeasCo, Inc., and therefore **GRANTS** Defendants' Motion for Summary Judgment.

## V. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Defendants Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS LeasCo, Inc. Because Plaintiffs alleged Defendants Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS LeasCo, Inc. are liable solely on a *respondeat superior* theory, the Court **FINDS** no claims remain against them. Therefore, the Court **ORDERS** the Clerk to **TERMINATE** Defendants Crown Enterprises, Inc., Central Transport International, Inc., Central Transport North America, Inc., Central Transport Michigan, LLC, and GLS LeasCo, Inc. from this action.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and/or *pro se* parties.

**DATED:** March 24, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE